# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MALIBU MEDIA, LLC,<br><br>    Plaintiff,<br>v.<br><br>JOHN DOES 1-30,<br><br>    Defendants. | Case Number: 2:12-cv-13312-DPH-MJH<br><br>Assigned to: District Judge Denise Page Hood<br>Referred to: Magistrate Judge Michael J. Hluchaniuk |

Paul J. Nicoletti (P44419)
Nicoletti & Associates, PLLC
Att: Litigation Dept.
36880 Woodward Ave
Suite 100
Bloomfield Hills, MI 48304
248-203-7800
Fax: 248-928-7051
Email: paul@nicoletti-associates.com

Morgan E. Pietz (CA 260629)*
THE PIETZ LAW FIRM
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
Phone:  (310) 424-5557
Fax:     (310) 546-5301
mpietz@pietzlawfirm.com

*Application for Admission to Practice Pending*

Hattem A. Beydoun (P66071)
EPIC Law PLLC
PO Box 32598
Detroit, MI 48232
888-715-8033
Fax: 313-254-4923
Email: hbeydoun@epiclg.com

Attorney for Plaintiff
Malibu Media, LLC

Attorney for Putative John Doe X

Local Counsel for Putative John Doe X

# DECLARATION OF MORGAN E. PIETZ
# RE: PLAINTIFF'S ABUSIVE LITIGATION TACTICS

DECLARATION OF MORGAN E. PIETZ
RE: PLAINTIFF'S ABUSIVE LITIGATION TACTICS

# DECLARATION OF MORGAN E. PIETZ
# RE: PLAINTIFF'S ABUSIVE LITIGATION TACTICS

I, Morgan E. Pietz, have personal knowledge of the facts alleged herein and hereby declare as follows:

1. I am an attorney duly admitted to the practice of law in the state and federal courts of the State of California.

2. I am the attorney principally responsible for the representation of multiple different individuals who received letters from their ISPs regarding subpoenas issued by plaintiffs Malibu Media, LLC and Patrick Collins, Inc. in connection with various lawsuits pending around the Country. I represent a putative John Doe in this case. This client is ***not*** Putative John Doe No. 1.

3. My clients, including my client here, John Doe "X" wishes to proceed anonymously, given the potentially embarrassing, pornographic nature of the content Plaintiff is claiming my clients downloaded.

4. The identities of each of my client, including the putative John Doe I represent here, are known to me, and. if the Court requests it, I would be happy to lodge with the Court an exhibit identifying, *for the Court only,* each Doe who is a moving party by name, I.P. address and/or Doe number.

**(a)        Malibu Media and Patrick Collins: Serial Copyright Infringement Plaintiffs**

5. I am familiar with the plaintiff in this action. I represent various people around the country who have been threatened with suit by Malibu Media and Patrick Collins. According to a PACER search I performed on November 8, 2012, so far in 2012, Malibu Media has filed 365 copyright infringement actions in various courts around the country. Based on an average of 16.2 John Doe per case,[1] that works out to approximately 5,913 John Does that Malibu Media has sued this year. Similarly, as of November 8, 2012, Patrick Collins had filed 247 cases nationwide. A

---

[1] Calculated as of August 14, 2012, by tallying the number of Does from each caption, which amounted to 4,209, in the 260 cases Malibu Media had filed at that point in time, for each case where the number of Does was visible on the caption.

true and correct copy of the complete case list from PACER for the Plaintiff is attached hereto as Exhibit A.

  (d)      **Abusive Litigation Tactic Number One: Failure to File Notices of Related Cases**

6. Notwithstanding the many similarities between the cases filed by Malibu Media, as well as the cases filed by plaintiff's counsel on behalf of Patrick Collins, Inc., plaintiff's counsel in California, Ms. Leemore Kushner, generally ignores most courts' Notice of Related Cases rules (which, in California, require a plaintiff to file a Notice of Related Cases upon filing a new complaint in a case related to a prior case). Malibu Media did not file any notices of related cases in any of its matters in the Southern District of California.. Similarly, it did not file any notices of related cases in the Central District of California, and it initially refused to file any Notices of Related Cases in the Eastern District of California. This has resulted in scores of Judges across the State of California initially being assigned to highly similar Malibu Media cases. Further, plaintiff's counsel also did not initially file Notices of Related Cases in the many cases she filed in the Central District of California on behalf of Patrick Collins, Inc. Ms. Kushner's general policy appears to be to ignore Notice of Related Cases rules for as long as she and her clients can get away with it. After becoming involved in most of these cases, the undersigned filed a Notice of Related cases resulting in transfer of most of the Malibu Media and Patrick Collins cases to a single Judge in each district.

  (e)      **Abusive Litigation Tactic Number Two: Use of Same Group of Notorious Professional "Negotiators" to Extract Settlements for Alleged Infringement**

7. On June 13, 2012, I attempted to contact counsel for Malibu Media, Ms. Leemore Kushner, via email to ask what its settlement demand for a client Malibu Media was suing in the Central District of California.

8. On June 14, 2012, Ms. Kushner told me via email that the next day, either she or her client, with whom she authorized me to speak, would be getting back to me with a settlement demand. When nobody called on Friday, I followed up with Ms. Kushner first thing Monday morning June 18, 2012.

9. Later on June 18, 2012, I received a voice message from a woman named Elizabeth Jones, who called me from a 786 (Miami) area code. In her voice message, Ms. Jones identified my client's case number and Doe number, and explained that she was given my information by Ms. Kushner who authorized me to speak with her and that "we handle the settlement communications."

10. I called Elizabeth Jones back later that day, June 18, 2012, and she answered. I asked her what company she was with and she said "we work with Malibu Media." I asked her if she was an employee of Malibu Media, and she responded that "we work in relation with them." I asked her if she worked for an independent company that handled Malibu Media's settlement communications, and if so, what was the name of her company. She repeated that "we work with Malibu Media." I asked her to please explain what she meant by "we" when she said "we work with Malibu Media" because this sentence seemed to imply that she did not actually work for Malibu Media and was therefore not the "client" with whom I had been authorized to speak. She responded that it seemed like I was not really calling because I was serious about a settlement, but that she "handled" Malibu Media's settlement communications. Later in this conversation, Ms. Jones admitted to me that she fielded settlement calls from "20 to 30 counsel per day," and when I asked how long she had been doing this line of work she answered for "a couple years." Based on her answers during our phone call, as well as my experience in similar copyright infringement cases, I concluded that Ms. Jones is likely a third party "negotiator" to whom Malibu Media outsources is collection efforts.

11. On Monday June 25, 2012, at 12:05 p.m., Elizabeth Jones called me again to follow up on our prior discussion. She explained that she understood I had more than one case pending with Malibu Media and asked me to identify what John Does I was representing. Before answering, I pressed her again to please clarify what her exact capacity was in connection with this case. I asked her if she was an attorney, and she said no. After explaining that I did have more than one of these cases, I asked her if I could contact her about all of them, and did she work for a third party company that handled negotiations for Malibu Media. This time, she explained that yes she did work for such a company, and that "we" have a "Joint Sharing Agreement" with "Zero

Tolerance, Third Degree, Patrick Collins, K-Beech, Malibu Media, Raw Films, and Nu-Corp." I asked her to repeat that so I could write it down, and she did. She also offered that I could contact her directly to negotiate for any of those plaintiffs.

12.  At no time during either of my conversations with Elizabeth Jones, the non-attorney, third party "negotiator," did she ever indicate that she considered our conversation to be confidential or that I should treat it as such. Similarly, I also did not invoke confidentiality. Neither Ms. Jones nor I ever used the word confidential, or any word like it, at any point in our two conversations.

**(f)       Abusive Litigation Tactic Number Three: Material Misrepresentation by the Settlement Negotiator as to the Range of Statutory Damages**

13.  During my conversation with Elizabeth Jones, Malibu Media's settlement negotiator, on June 18, 2012, she told me that Malibu Media's settlement demand for my client was $19,500. She explained that Malibu Media sought "the minimum statutory damages for each work of $750 per work," and that in the case of my client, John Doe No. 5, there were "a total of 26 registered hits." At first, I did not realize that what Malibu Media's settlement "negotiator" told me is actually incorrect. The actual statutory damage *minimum*, for innocent infringement, is $200 per work. 17 U.S.C. § 504(c)(2). Eventually, it dawned on me that this statement was incorrect; however, I doubt that a non-lawyer speaking to "Elizabeth Jones," or even a lawyer unfamiliar with copyright law, would catch this small but important misrepresentation.

**(g)       Abusive Litigation Tactic Number Four: Use of the Court's Subpoena Power to Try and Collect on Claims That Are Not Alleged in the Complaint and Go Beyond the Scope of this Litigation**

14.  After Ms. Jones explained Malibu Media's settlement demand to me during our phone conversation on June 18, 2012, wherein she said my client was liable for "a total of 26 registered hits," I told her that this did not sound right to me. I explained that I thought my client was alleged to have infringed less than 26 works of authorship. So I pulled the complaint while we were on the phone together, confirmed, and then explained to Ms. Jones that, per Exhibit C of the complaint, my client was alleged to have infringed on only 15 copyrighted works. I further

explained that by my math, applying the $750 "minimum" figure, worked out to $11,250, not $19,500.  At this point, I asked Ms. Jones to please double check that to make sure that she had the right case and Doe number, because I could not understand why the demand was $19,500, and I thought perhaps she had my client mistaken with someone else.

15. Ms. Jones confirmed that she was sure we were talking about the correct case and Doe, and confirmed the $19,500 figure was not a mistake. She explained to me that although the complaint alleged a siterip for 15 registered works, on April 1, 2012, *according to her records*, there had been "a second siterip 2 days later" for 11 more works.  ***I explained that I was trying to settle the claims that were actually alleged in the Complaint***, and that according to Exhibit C of the Complaint, my client had allegedly infringed 15 works of authorship, not 26.  She again reiterated that according to her records, there was a "second siterip" on April 3, 2012, and that because of this, the settlement demand was going to be $19,500 to settle Malibu Media's claims, and that she "could send me a declaration" about the second siterip.  I then asked her if any settlement had to be all-or-nothing, meaning was it possible for my client to pay $11,250 to settle only those claims actually alleged in the complaint?  She responded that "it is all or nothing" and that if my client wanted to settle he/she would have to pay the full $19,500.  At this point, I said that since I didn't know anything about the "second siterip" not alleged in the complaint, it was hard for me to know what to make of this demand, and I asked her to please send me the declaration she had mentioned.  She said she would do so.

16. During my conversation with Elizabeth Jones, Malibu Media's negotiator, on June 18, 2012, I also asked her what the next steps would be if my client did not pay the $19,500 demanded for settlement.  She said that the next step would be "service," and that "as the case goes on, the settlement number will go up."  She further explained that if "our side has to do more work on the case," the value will go up.  I asked her to explain what she meant by the next step being service, and she explained that after information is disclosed they would be sending letters asking whether we would accept service.  I replied that it was my understanding that Malibu Media had filed over 200 lawsuits, against thousands of John Doe defendants, and that it had served essentially none of them, so I asked her if she had any experience settling claims with defendants

who had actually been served.  She responded that she *had* accepted settlement for defendants who had been served.  I asked her how many, to which she responded "I am not the one on trial here." Then I asked her whether she was new to the company and if she really knew what she was doing, which is when she explained to me that she fields calls from "20 to 30 counsel per day" and, when prompted, explained that she had been doing this for "a couple years."  I asked her if she could tell me, based on her extensive experience, out of how many cases she had handled, had she accepted a settlement from someone who had already been served with a complaint.  She responded "every case is different."

17.     Before hanging up with Elizabeth Jones, I reiterated that I would like her to send me the declaration she had mentioned about the "second siterip."  I asked her how long it would take her to send me this declaration, and she said that it would be sent to me, by Ms. Kushner, within 24-48 hours.  I asked her for her email address so I could follow up, and she insisted that any email contact should go through Leemore Kushner.  Then I thanked her for her time and hung up.

18.     After waiting the requisite 24-48 hours and not receiving the Declaration Elizabeth Jones had promised me, I emailed Plaintiff's counsel Leemore Kushner to follow up.  Attached hereto as Exhibit B is a true and correct copy of the "Declaration" that was sent to me by Ms. Kushner, along with cover email.  This Declaration, which was executed by Malibu Media's technical expert, purports to provide details about the "second siterip," which is not alleged in the complaint but which supposedly occurred on April 3, 2012.  For reference, the complaint in this case, 12-cv-3614, was filed on April 26, 2012.

19.     Ms. Kushner has repeated this tactic with respect to other Does sued by Malibu Media, and with respect to other Does sued by Patrick Collins. On August 10, 2012, I contacted Ms. Kushner regarding my client, putative John Doe No. 7 in C.D. Cal. Case No. 12-cv-5268, who, according to the complaint, downloaded a single copyrighted work owned by Patrick Collins, called *Anal Students*, on 4/11/12.  When we discussed settlement, Ms. Kushner insisted that any settlement would have to also compensate Patrick Collins for the additional infringements, of additional works, which were "logged" on subsequent dates.  In that case, C.D. Cal. Case No. 12-

cv-5268, the *complaint* alleges that my client, putative Doe No. 7, downloaded a single work—*Anal Students*—on 4/11/12.  However, in order to settle the case, Ms. Kushner insisted that "The settlement demand for this Doe is [REDACTED] for his/her infringement of three of Patrick Collins' works:

> 04/11/2012 10:00:09 | Anal Students
>
> 06/18/2012 07:56:29 | Performers of the Year 2012
>
> 04/30/2012 06:28:30 | Asa Akira Is Insatiable #2."

It is significant that the infringement of the second two titles, which are the subject of other lawsuits filed by Ms. Kushner, is ***not alleged in the complaint*** in 12-5268.  Notably, when the Court granted early discovery in that action, as many other Courts have done, it ordered that "Patrick Collins, Inc. may only use the information disclosed for the sole purpose of protecting its rights in pursuing this litigation."  12-5268, Dkt. No. 7, p. 5.  Taking settlement demands beyond the scope of what is actually alleged in the complaint—which appears to be a routine practice for Ms. Kushner's office—would appear to, at the very least, come perilously close to violating this condition of the Court's order.[2]

**(h)        Abusive Litigation Tactic Number Five: Overbroad Subpoena Seeking Phone Numbers and Emails**

20.    On May 1, 2012, Magistrate Brown, of the Eastern District of New York, issued a report and recommendation that was specifically addressed to Malibu Media.  In the discovery order part of the report, Judge Brown directed that "Under no circumstances are plaintiffs permitted to seek or obtain the telephone numbers or email addresses of these individuals."  The plaintiffs to whom Judge Brown was referring specifically include Malibu Media.

---

[2] Another example of this same pattern occurred on July 18, 2012.  I emailed Ms. Kushner regarding a settlement for a client sued by Malibu Media in C.D. Cal. Case No. 12-650.  The complaint alleged a person using my client's I.P. address downloaded one movie.  However, Ms. Kushner insisted that any settlement would have to be for seven movies.  As in other cases, the order authorizing early discovery in that case—which was subsequently vacated—required that "Plaintiff, Malibu Media, LLC, may only use the information disclosed for the sole purpose of protecting its rights in pursuing this litigation;".  C.D. Cal. Case No. 8:12-cv-650, Dkt. No. 7, p. 6:26-27.  It seems clear that Ms. Kushner is using the subpoenas to try and collect on claims that go well beyond the four corners of the complaints.

21.     Three days later, on May 4, 2012, Malibu Media filed its request for early discovery in C.D. Cal. Case NO. 12-cv-3614, seeking to obtain by subpoena the telephone numbers and email addresses of John Does who allegedly reside in the Central District of California. Similarly, in the Southern District, Ms. Kushner also spent much of mid-May filing requests for early discovery which sought information Malibu Media had been specifically ordered not to request anymore. *E.g.*, S.D. Cal. Case No. 12-cv-1135, Dkt. No. 4, Motion for Discovery for Leave to Serve Third Party Subpoenas Prior to a Rule 26(f) Conference, filed May 15, 2012.  Similarly, Ms. Kushner has sought the same information from the Courts of this District, subsequent to Judge Brown's order.  However, in evaluating the early discovery request, many of the Magistrate Judges of this District who have addressed this issue recently in Patrick Collins and Malibu Media cases have refused to allow Ms. Kushner's office to seek the ISP subscriber's telephone and email addresses.

(i)     **Abusive Litigation Tactic Number Six: Malibu Media and Patrick Collins' History of Never Serving Any John Does**

22.     As of mid-July, 2012, I had filed at least four motions challenging Malibu Media to disclose, under penalty of perjury, how many John Does it has served nationwide.  However, until early September, 2012, Malibu Media refused to answer this question, in any forum.

23.     Accordingly, on July 17, 2012, I endeavored to try and answer this question on my own. To begin this process, I ran an updated search of all cases Malibu Media has filed nationwide on PACER and exported the results as a spreadsheet.  As of July 17, 2012, this number had risen to 237 cases.  After sorting the data by date filed, I highlighted on the spreadsheet the 35 cases that were over 120-days old as of July 17, 2012.  I then directed my staff to pull the docket reports for each of these 35 cases, and I reviewed each one of dockets myself, filling in the final two columns on the spreadsheet with my results.

24.     As of July, 16, 2012, Malibu Media had not formally served a single John Doe defendant in any of the 35 cases it has filed that were at least 120 days old on that date. In most cases, Malibu Media: (i) voluntarily dismissed remaining John Does (meaning those who had not already settled) *without* prejudice at or near the service deadline; (ii) sought leave of Court for an

extension of time for service, or simply ignored the service deadline altogether; or (iii) in two cases, Malibu Media simply dismissed the case without prejudice prior to even requesting early discovery.

25. In a reply brief Ms. Kushner filed in the Central District of California on September 10, 2012, for the first time that I am aware of, Malibu Media has addressed, albeit in misleading fashion and not under penalty of perjury, the question of how many people has it actually served nationwide. C.D. Cal. Case No. 2:12-cv-03614-RGK-SS, Dkt. No. 33, Filed 09/10/12. In my opposition to Malibu Media's Renewed Motion for Leave to Issue Third Party Subpoenas to ISPs Prior to a Rule 26(f) conference, I had argued that Malibu Media's subpoenas are not "very likely" or even "reasonably likely" to lead to identification and service of a complaint on a proper defendant, given that Malibu Media basically never serves anyone. Malibu Media responded that it "has sued numerous individual defendants for copyright infringement in courts throughout the country, and has every intention of *litigating* these cases as well." *Id.* (emphasis added). Notably, Ms. Kushner does not say that Malibu Media has every intention of actually "serving" anybody. In support of this statement, Ms. Kushner dropped a footnote, "*e.g.*" citing to 18 cases from across the country. The cases Ms. Kushner cited are:

   a. Malibu Media LLC v. Southgate, 3:12-cv-00369-DMS-WMC (S.D.Cal.);
   b. Malibu Media, LLC v. Abrahimzadez, 1:12-cv-01200-ESH (D.D.C.);
   c. Malibu Media LLC v. Bochnak, 1:12-cv-07030 (N.D.Ill.);
   d. Malibu Media LLC v. Siembida, 1:12-cv-07031 (N.D.Ill.);
   e. Malibu Media LLC v. Vancamp, 2:12-cv-13887-PDB-DRG (E.D.Mich.);
   f. Malibu Media LLC v. Fantalis, 1:12-cv-00886-MEH (D.Colo.);
   g. Malibu Media LLC v. Xu, 1:12-cv-1866-MSK-MEH (D.Colo.);
   h. Malibu Media LLC v. Allison, 1:12-cv-1867-MSK-MEH (D.Colo.);
   i. Malibu Media LLC v. Ramsey, 1:12-cv-1868-MSK-MEH (D.Colo.);
   j. Malibu Media LLC v. Tipton, 1:12-cv-1869-MSK-MEH (D.Colo.);
   k. Malibu Media LLC v. Kahrs, 1:12-cv-1870-MSK-MEH (D.Colo.);
   l. Malibu Media LLC v. Domindo, 1:12-cv-1871-MSK-MEH (D.Colo.);
   m. Malibu Media LLC v. Peng, 1:12-cv-1872-MSK-MEH (D.Colo.);
   n. Malibu Media LLC v. Maness, 1:12-cv-1873-MSK-MEH (D.Colo.);
   o. Malibu Media LLC v. Nelson, 1:12-cv-1875-MSK-MEH (D.Colo.);
   p. Malibu Media LLC v. Geary, 1:12-cv-1876 MSK-MEH (D.Colo.);
   q. Malibu Media LLC v. Detweiler, 2:12-cv-4253-ER (E.D.Pa.);
   r. Malibu Media LLC v. Johnston, 2:12-cv-4200-JHS (E.D.Pa.).

26. Curious, I had my office staff pull the docket for all 18 of these cases from PACER, and we compiled them. I then reviewed each docket. Based on my review of these dockets, and assuming these are the only cases where Malibu Media has served anyone, it appears that, ***to date, nationwide, out of the nearly 300 cases it has filed against nearly 5,000 John Does, Malibu Media can point to having served a grand total four people, in two cases***. Specifically, out of the 18 cases Malibu Media cites as evidence that it is serious about "litigating," and as shown in Appendix 2, it appears Malibu Media served three people (Jeff Fantails, Bruce Dunn, and Stephen Deus) in Case No. 12-cv-0886 currently pending in the District of Colorado, and one person (Gan Southgate) in Case No. 12-cv-369 currently pending in the Southern District of California. All the rest of the cases are instances where "Malibu Media" has followed through on its threat to "name" someone and trash their reputation, but has not yet actually served anyone and subjected themselves to a counter-claim for abuse of process. Based on the most recent nationwide case tally I ran from PACER on August 14, 2012 (Malibu Media has undoubtedly filed more cases since then) I calculated that Malibu Media had sued approximately 4,646 people, in 286 mass infringement cases. Thus, it would appear that Malibu Media's nationwide service of process average is an infinitesimal 0.04%. When I looked at the spreadsheet another way, it showed that of those 287+ cases nationwide, 139 cases, or not quite half, were already over 120 days old as of September 13, 2012. And as of that date, Malibu Media appears to have served 4 people.

27. My office has yet to calculate similar national numbers for Patrick Collins. However, I have performed a cursory review the dockets in each of the terminated cases filed by Patrick Collins in both the Southern District of California and the Central District of California. It appears the same pattern holds. Generally, after seeking early discovery, and sometimes after requesting extensions of the service deadline, at or near the service deadline, the plaintiff simply dismisses most, and eventually all Does (other than those who have already "settled") without prejudice. There are a total of 11 prior cases filed by Patrick Collins in the Southern and Central Districts of California, terminated as of September 21, 2012, and it appears that in no case have they served anybody.

28. Attached hereto as Exhibit C are true and correct copies of four sworn declarations filed by the defendant in one of the four Malibu Media cases nationwide where Malibu Media has actually served someone. Three of the declarations are from subpoena defense attorneys like me detailing how Malibu Media routinely ignores attempts to meet and confer to try and resolve these lawsuits in good faith. And the final declaration is from a 66 year old *pro se* defendant who has had the same troubling experience. The attorney being referred to in these declarations, Jason Kotzker, represents both Malibu Media and Patrick Collins. These declarations were originally filed in *Malibu Media v. Fantails,* D. Colo. Case No. 1:12-cv-00886-MEH, ECF No. 80, pp. 37-41.

29. Attached hereto as Exhibit D is a true and correct copy of a recent decision by Judge Klausner of the Central District of California severing all John Does and denying early discovery as to all John Does, even John Doe No. 1, in the thirty-three (33) Malibu Media cases that were assigned to Judge Klausner pursuant to the low-number rule. The lead case, where this Exhibit was originally filed, is *Malibu Media v. John Does 1-10*, C.D. Cal. 12-cv-1642-RGK, ECF No. 32, 10/10/12.

30. Attached hereto as Exhibit E is a recent decision by Judge Huff of the Southern District of California severing all John Does in a Patrick Collins case. The case where this decision was originally filed is *Patrick Collins v. John Does 1-9,* S.D. Cal. Case No. 12-cv-1436-H, ECF No. 23, 11/8/12.

31. Attached hereto as Exhibit F is a recent decision by Magistrate Judge Drozd of the Eastern District of California reconsidering and vacation all priors orders issued by Judges of the Eastern District authorizing Malibu Media to take early discovery, and recommended severance. The case where the decision was originally filed is *Malibu Media v. John Does 1-13,* E.D. Cal. Case No. 12-cv-1260-JAM, ECF. No. 30, 10/10/12.

32. Exhibits D, E, and F are decisions that were each issued in cases where the undersigned made the same arguments that the undersigned is making to the Court here.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 29, 2012 at Manhattan Beach, California.

*/s/ Morgan E. Pietz*

Morgan E. Pietz, Declarant

CERTIFICATE OF SERVICE

I hereby certify that the above document was submitted today to the CM/ECF system, which sent notification of such filing(s) to the Plaintiff which is registered for electronic service.
Check if Applicable:
[ ] Copies of these documents were also served via U.S. Mail, on this date, to the following parties, who are not registered for electronic service:
N/A

DATED: November 29, 2012

*/s/ Hattem A. Beydoun*

Hattem A. Beydoun (P66071)
EPIC Law PLLC
PO Box 32598
Detroit, MI 48232
888-715-8033
Fax: 313-254-4923
Email: hbeydoun@epiclg.com

Local Counsel for Putative John Doe X