UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MALIBU MEDIA, LLC, | Case No. 12-13312 |
| Plaintiff, | Denise Page Hood |
| v. | United States District Judge |
| JOHN DOES 1-30, | Michael Hluchaniuk |
| | United States Magistrate Judge |
| Defendants. | |
| _____/ | |

**REPORT AND RECOMMENDATION**
**MOTIONS TO SEVER DEFENDANTS (Dkt. 19, 33)**

**I.    PROCEDURAL HISTORY**

Several related motions are pending in this case, including multiple motions to quash (Dkt. 9, 12, 19, 21) and two motions to sever (Dkt. 19, 33). After holding a hearing on February 5, 2013, most of these motions were taken under advisement (Dkt. 9, 12, 19, 21)[1] pending the district judge's decision on Dkt. 33, which was set for hearing on March 6, 2013. (Dkt. 43). The district judge then cancelled the hearing and referred the second motion to sever to the undersigned for report and recommendation. (Dkt. 56). The second motion to sever was filed on January 4, 2013. (Dkt. 33). A response was filed on January 18, 2013. (Dkt. 45). Plaintiff filed a reply on February 1, 2013. (Dkt. 49). Pursuant to notice, a hearing was

---

[1] The non-dispositive motions will be disposed of via separate order.

held on April 18, 2013. (Dkt. 57).

For the reasons set forth below, the undersigned **RECOMMENDS** that the motions to sever the defendants be **DENIED**.

## II.   FACTUAL BACKGROUND

### A.   Technical Background

Judge Ludington's opinion in *Patrick Collins v. John Does 1-28*, 2013 WL 359759 (E.D. Mich. 2013) provides a thorough explanation of the BitTorrent technology:

> To examine the particular allegations of copyright infringement in this case, understanding how BitTorrent works is necessary. Before taking up this task, however, some familiarity with the vocabulary of this technology is required:
>
> *Internet Protocol (IP)*: The system of communication standards that ensures that data packets transmitted over the internet reach their intended destinations.
>
> *IP Address*: The unique identifying number of a device connected to the internet.
>
> *Uniform Resource Locator (URL)*: The internet address assigned to a web document or resource by which it can be accessed by all web browsers.
>
> *File*: A collection of related data packets treated as a unit.
>
> *Hash Identifier*: A 40 character alphanumeric string that forms a unique identifier of an encoded file.
>
> *Hypertext Transfer Protocol (HTTP)*: A system of

communication standards that websites use to communicate with web browsers.

*BitTorrent*: A peer-to-peer file sharing protocol.

*Peer*: A BitTorrent user.

*Swarm*: A group of peers sharing a particular file (identified by its unique hash identifier). A swarm has two types of peers—"leechers" and "seeds." It bears reiterating: to constitute a swarm all of the peers must be sharing the same file (identified by its unique hash identifier).

*Initial Seeder*: A BitTorrent user who first takes a particular file (such as a movie), breaks it into pieces, encodes the pieces with hash identifiers, creates a torrent file with the data about that file and its tracker, and makes the complete file available to other BitTorrent users.

*Seed*: A peer who downloaded a complete file and is uploading all of its pieces to other peers in the swarm.

*Leecher*: A peer in the process of downloading the file from the other peers. As soon as a leecher downloads new content (a piece of the file), the leecher begins sharing its content with the other leechers in the swarm.

*Piece*: A one-quarter megabyte size part of a file being shared via BitTorrent (except for the last, smaller piece, which is the size of the remainder of the file).

*Tracker*: A server containing an updated list of peers in the swarm. It allows a peer to learn about other peers sharing a particular torrent and join the swarm.

*Torrent file*: The hub of the BitTorrent system, a torrent file is a small file containing the file name, the IP address

> of the tracker, the number of and size of the pieces, and the hash identifier unique to the pieces of that particular torrent file.
>
> *BitTorrent index server*: A server containing a list of .torrent files. Essentially a menu of available files, the BitTorrent index server is different from a tracker, which coordinates communication between peers seeking to download the content that the .torrent file describes.

*Id*. at *1-2 (internal footnotes and citations omitted) (italicized text in original).

Judge Ludington also explains how the BitTorrent technology works:

> Briefly, here's how BitTorrent works. A file transfer begins "when one user accesses the Internet through an ISP and intentionally makes a digital file of a work available to the public from his or her computer. This file is referred to as the first 'seed.' Other users, who are referred to as 'peers,' then access the Internet and request the file. These users engage each other in a group, referred to as a 'swarm,' and begin downloading the seed file. As each peer receives portions of the seed, that peer makes those portions available to other peers in the swarm." *Pac. Century Int'l, Ltd. v. Does 1-48*, C 11-3823 MEJ, 2011 WL 4725243, at *3 n. 1 (N.D. Cal. Oct.7, 2011) (internal citations omitted).

*Patrick Collins v. John Does 1-28*, 2013 WL 359759 at *3.  Elaborating on the

process, BitTorrent.org explains that to download a file, a peer performs six steps:

> 1. Install BitTorrent (or have done so already).
>
> 2. Surf the web.
>
> 3. Click on a link to a .torrent file.
>
> 4. Select where to save the file locally, or select a partial

>download to resume.
>
>5. Wait for download to complete.
>
>6. Tell downloader to exit (it keeps uploading until this happens).

*Id*. at *3, quoting, Bram Cohen, The BitTorrent Protocol Specification, BitTorrent.org (June 25, 2009), http://www.bittorrent.org/beps/bep_0003.html, cited in *Patrick Collins, Inc. v. John Does 1-21*, 282 F.R.D. 161, 163-64 (E.D. Mich. 2012), report and recommendation adopted, 286 F.R.D. 319 (E.D. Mich. 2012).

Judge Ludington goes on to explain that BitTorrent's key is reciprocity – a peer not only downloads but automatically uploads pieces to other peers. *Id*. "To keep the torrent operating at maximum capacity, the BitTorrent protocol uses a process called pipelining. Every active peer in a torrent maintains a continuously refreshed queue of requests for pieces, so that no connection is ever left idle after any one piece is downloaded." *Id*. at 3, quoting Annemarie Bridy, *Is Online Copyright Enforcement Scalable?*, 13 Vand. J. Ent. & Tech. L. 695, 702 (2011). "In addition, the protocol has an internal mechanism that makes sure that those peers who are offering little or nothing to the torrent will get little or nothing from it." *Id*., quoting Sean B. Karunaratne, Note, *The Case Against Combating Bittorrent Piracy Through Mass John Doe Copyright Infringement Lawsuits*, 111

Mich. L.Rev. 283, 289 (2012) (quotation marks omitted) (quoting *Bridy*, supra, at 702). In sum, BitTorrent is a reciprocal, decentralized network:

> Data is not stored on a central server. Rather, a user downloads the file in discrete segments from many different users who send data directly to one another. While trackers coordinate and assist peers in locating a swarm, the tracker itself sends out very little data. This makes BitTorrent an extremely efficient mechanism for transferring large files and at the same time, it insulates the protocol itself from anti-piracy efforts because there are no central servers to enjoin from unlawfully distributing copyrighted content. Thus, when copyrighted data is transmitted via BitTorrent, the copyright holder is largely limited to holding the individual file sharers liable for infringement.

*Id.* at *304, quoting *Karunaratne*, at 290 (footnotes, brackets, and quotation marks omitted), quoting *Diabolic Video Prods., Inc. v. Does 1–2099*, 2011 WL 3100404, at *2 (N.D. Cal. 2011).

B. <u>Plaintiff's Complaint</u>

In the Complaint, plaintiff alleges that it owns 16 motion picture copyrights. (Dkt. 1, ¶ 12). Each of the works were on a website that was converted into a single torrent file, as evidenced by a single unique Cryptographic Hash Value (the "Unique Hash Number"). (Dkt. 1, ¶ 14). Each of the defendants copied and distributed, through the BitTorrent protocol, the exact same torrent file, as evidenced by a single unique Cryptographic Hash Value, which contained plaintiff's 16 registered works. (Dkt. 1, ¶ 15).

Plaintiff retained IPP, Limited ("IPP") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the internet to reproduce, distribute, display or perform Plaintiffs' copyrighted works. (Dkt. 1, ¶ 39). IPP extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the file identified by the SHA-1 hash value of 121AC0B46088E7C235A23D4379BE65A1840E9B77 (the "Unique Hash Number"). (Dkt. 1, ¶ 41). Through each of the transactions, each of the defendant's computers used their identified IP addresses to connect to the investigative server from a computer in this District in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number. (Dkt. 1, ¶ 43). IPP's agent analyzed each BitTorrent "piece" distributed by each IP address listed on Exhibit A and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the Works. (Dkt. 1, ¶ 44). IPP's agent viewed the Works side-by-side with the digital media file that correlates to the Unique Hash Number and determined that they were identical or substantially similar. (Dkt. 1, ¶ 45). Based on its expert investigation and analysis, plaintiff alleges in the complaint that each defendant infringed on plaintiff's copyrights using BitTorrent to download their copyrighted works.

### III.   ANALYSIS AND CONCLUSION

A. <u>Permissive Joinder</u>

In the view of the undersigned, this issue of whether the BitTorrent swarm theory is sufficient to satisfy the Rule 20(a)(2) joinder requirements been ably and thoroughly analyzed by Magistrate Judge Randon in *Patrick Collins, supra*, as well as in Judge Ludington's opinion, *supra*. Judge Randon concluded:

> Applying the legal standards discussed above, joinder of Defendants is proper. Plaintiff alleges a right to relief severally against Defendants for direct and contributory copyright infringement of the Work; Plaintiff says that Defendants networked with other each other and/or with other peers through a series of transactions in the same swarm to infringe on Plaintiff's copyright. Stated simply:
>
>> [I]t is difficult to see how the sharing and downloading activity alleged in the Complaint—a series of individuals connecting either directly with each other or as part of a chain or "swarm" of connectivity designed to illegally copy and share the exact same copyrighted file-could *not* constitute a "series of transactions or occurrences" for purposes of Rule 20(a).
>
> *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239 (S.D.N.Y. 2012) (emphasis in original) (holding that 176 defendants were properly joined).

*Patrick Collins*, 282 F.R.D. at 167. As noted by Judge Ludington, however, whether membership in a BitTorrent swarm satisfies the requirements of Rule 20(a)(2) has split the federal district courts (including judges of the Federal District Court for the Eastern District of Michigan). *Compare e.g.*, *Patrick Collins, Inc. v.*

*John Does 1-21*, 286 F.R.D. 319, 2012 WL 4498373 (E.D. Mich. 2012) (Hood, J.) (concluding that joinder was proper and therefore denying a motion to sever), with *Patrick Collins, Inc. v. John Does 1-23*, 2012 WL 1019034 (E.D. Mich. 2012) (Steeh, J.) (reaching opposite conclusion); *see generally Patrick Collins, Inc. v. John Does 121*, 282 F.R.D. 161, 165 (E.D. Mich. 2012) (collecting cases), report and recommendation adopted, 11-15232, 286 F.R.D. 319, 2012 WL 4498373 (E.D. Mich. 2012); *see also*, *Third Degree Films, Inc. v. John Does 1-72*, 2013 WL 1164024 (E.D. Mich. 2013) (recommending severance) (Grand, M.J.).[2]

As applied to the allegations in this case, however, the undersigned concludes that those courts answering this question in the affirmative have the stronger argument. The first requirement for joinder is that the claims against each defendant arise from a "series of transactions or occurrences" having a "logical relationship." *Patrick Collins v. John Does 1-28*, 2013 WL 359759 at *6, citing, *In re EMC Corp.*, 677 F.3d 1351, 1355-58 (Fed. Cir. 2012). The allegations in the complaint satisfy this test. As Magistrate Judge Randon observed when presented with a similar set of allegations,

> If Plaintiff['s] allegations are true, each Defendant must have downloaded the piece(s) each had on his or her

---

[2] As of the date of this report and recommendation, no objections have been filed to Magistrate Judge Grand's report and recommendation. While the deadline for doing so has passed, the District Court has not yet disposed of the report and recommendation. *See* Case No., 12-14106.

computer in one, or more, of the following four ways:

1) the Defendant connected to and transferred a piece of the Movie from the initial seeder; or

2) the Defendant connected to and transferred a piece of the Movie from a seeder who downloaded the completed file from the initial seeder or from other peers; or

3) the Defendant connected to and transferred a piece of the Movie from other Defendants who downloaded from the initial seeder or from other peers; or

4) the Defendant connected to and transferred a piece of the Movie from other peers who downloaded from other Defendants, other peers, other Seeders, or the Initial Seeder.

In other words, in the universe of possible transactions, at some point, each Defendant downloaded a piece of the Movie, which had been transferred through a series of uploads and downloads from the Initial Seeder, through other users or directly, to each Defendant, and finally to IPP.

Therefore, each Defendant is logically related to every other Defendant because they were all part of a series of transactions linked to a unique Initial Seeder and to each other. This relatedness arises not merely because of their common use of the BitTorrent protocol, but because each Defendant affirmatively chose to download the same Torrent file that was created by the same initial seeder, intending to: 1) utilize other users' computers to download pieces of the same Movie, and 2) allow his or her own computer to be used in the infringement by other peers and Defendants in the same swarm.

*Patrick Collins*, 282 F.R.D. at 165 (emphasis omitted); *see also*, *Call of the Wild*

*Movie, LLC v. Does 1-1,062*, 770 F.Supp.2d 332, 343 (D. D.C. 2011) (finding logical relationship because each defendant "may be responsible for distributing the motion pictures to the other putative defendants, who are also using the same file-sharing protocol to copy the identical copyrighted material"). The second requirement for joinder, "common questions of law or fact, is easily met because the claims asserted against each John Doe Defendant are identical." *W. Coast Productions, Inc. v. Does 1-5829*, 275 F.R.D. 9, 16 (D. D.C. 2011). Because plaintiff's complaint satisfies the requirements of Rule 20, the motions to sever should be denied.

    B.    <u>Discretion to Sever</u>

Several recent decisions have ordered severance, not based on improper joinder, but using the discretion of the Court to order severance to serve the interests of judicial efficiency and docket and case management control. This trend seems to have started in the Middle District of Florida, in *Malibu Media v. John Does 1-28*, Case No. 12-1667 (M.D. Fla. 2012) (Dkt. 22). Relying quite heavily on Judge Randon's decision and other similar decisions, District Judge James Whittemore concluded that joinder was, in fact, proper under Rule 20(a). He also concluded that severance was appropriate under Rule 21, taking note of similar conclusions reached in cases from Massachusetts and New York.

The first reason cited in support of this conclusion was the common

11

Report and Recommendation
Motion to Sever
*Malibu Media v. Does 1-30*; Case No. 13312

assertion of the "it wasn't me" defense by various defendants. An assertion of this defense requires unique factual proofs as to each defendant who asserts such a defense, which will result in "mini-trials" on the merits, having nothing whatsoever to do with the other defendants. Similarly, Judge Whittemore noted that, as evidenced by the pending motions to quash, various discovery motions are likely to be filed by individual defendants, involving "unique arguments and individualized concerns."

Next, Judge Whittemore pointed to the likelihood of multiple unrelated motions and defenses, which suggest few, if any judicial economies to be gained by joining these claims, notwithstanding the swarm allegations. He also points out that the only real efficiency to be gained is by plaintiff in not having to pay multiple filing fees. And, he noted that copyright holders who prevail can recover filing fees and attorney fees from infringers, so this was not a significant impediment to plaintiff's efforts to protect its copyrights.

Judge Whittemore found the most significant factor in this analysis to be joinder generating "significant case management concerns jeopardizing the court's ability to control its docket if Malibu proceeds on the merits." (Case No. 12-1667, Dkt. 22, p. 14). He pointed out that with 28 defendants, meaningful case management deadlines will not be reasonably achievable without extensive hearings; as defendants are identified, there will be a multitude of amended

complaints, which presents an administrative chore for the Court, the clerk, and the parties with service on pro se defendants and the like; early identified defendants may have their cases languish while the pursuit of the identities of other defendants is ongoing. Judge Whittemore concluded that from a "district wide perspective, the sheer volume of BitTorrent copyright cases and associated Doe defendants has the potential of overwhelming the docket. Simply put, effective management of these cases will be impractical."

Other recent decisions have adopted Judge Whittemore's method. *See e.g.*, *Malibu Media v. John Does 1, 2, 4-7, 11, 16, 17 & 21*, — F.Supp.2d —; 2013 WL 525352 (M.D. Fla. 2013); *Dead Season LLC v. Does 1-13*, 2013 WL 424131 (M.D. Fla. 2013). This was the path selected by Magistrate Judge Grand in a report and recommendation dated March 18, 2013. *Third Degree Films, Inc. v. John Does 1-72*, 2013 WL 1164024 (E.D. Mich. 2013). Judge Grand also points to many of the case management and inefficiency issues discussed above and rejects those cases determining that severance should be decided *after* the defendants are identified. In his view, there is no reason to wait:

> The court finds this reasoning inapplicable in the present case for two reasons. First, as detailed above, this court has ample basis at this time, both from the record before it and from the experiences of other similarly situated courts, to find that these fairness and manageability concerns are real and substantial here, and it sees no benefit to waiting for them to worsen before taking steps

to ameliorate them. *See, e.g., Malibu Media*, 2013 WL 525352 at *3 ("If joinder is not appropriate, the Court sees no justification in prolonging the decision until after service, a course of action which would undoubtedly increase costs for the parties, particularly those of any Defendant who wishes to appear in the action in an attempt to defend his or her own interests."). Should the individual suits against these defendants develop such that fairness and efficiency would be better served by joining them in whole or part, consolidation remains an option at that time. *See Malibu Media*, 2013 WL 136239 at *3; *Malibu Media*, No. 12–00616, ECF No. 8 at 8–9; *Third Degree Films*, 286 F.R.D. at 197.

Second, this court harbors serious doubts whether this case will go forward long enough for severance to be revisited. To date, plaintiff has informed the court that it has received responses to its subpoenas from two ISPs, and through those responses, the names of 17 defendants [15]; plaintiff has dismissed all of these defendants without prejudice [16]. Plaintiff's prior actions in this District bear this pattern out further: In *Third Degree Films v. Does 1-36*, No. 11-15200 (E.D. Mich.)—the prior case brought by plaintiff in this District with respect to the same Work—the court denied the defendants' motions to quash and sever, and that very same day, plaintiff dismissed all remaining defendants from the case without prejudice and consented to the closure of the case. ECF Nos. 17 & 18. Similarly, in *Third Degree Films v. John Does 1-20*, No. 11-15202 (E.D. Mich.), the court granted leave to serve third party subpoenas, no oppositions to the subpoenas were filed, and plaintiff thereafter dismissed all doe defendants from the case without prejudice and consented to closure of the case. ECF Nos. 7 & 8. Both cases were closed, and have remained so.

*Id*. at *9. Respectfully, the undersigned disagrees with the analysis presented by

both Judge Whittemore and Judge Grand. The potential case management issues are speculative and should be addressed when, and if, they arise. Trading the uncertainty of *possible* problems from multiple defenses for the certainty of multiple lawsuits does not make practical sense, at this point, and seems contrary to the potential economies Rule 20 hopes to achieve. *See e.g.*, *Voltage Pictures, LLC v. Does 1-43*, 2013 WL 1874862, *4 (N.D. Ohio 2013) (Court concluded that, at the preliminary stage of litigation, the plaintiff pleaded sufficient facts to support permissive joinder, and finding that a "wait and see" approach was appropriate as to whether the defendants offered unique defenses, requiring "mini-trials."). Denying severance at this juncture does not preclude the Court from doing so later, should these speculative matters become a reality. Thus, the undersigned remains convinced that discretionary severance should be addressed *after* the defendants are identified. *See id*. The undersigned is not, however convinced that there is any evidence of inappropriate litigation practices by plaintiff *in this case* warranting severance. *See Voltage Pictures*, at *5 ("Should the Court find that plaintiff has abused the process of joinder, the individual John Doe defendants may be entitled to—in addition to a severance—sanctions from plaintiff, under Rule 11 or 54 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, or the Court's inherent powers," however the "Court will not automatically hold plaintiff responsible for the alleged abuses of others in its industry..."). Based on the foregoing, the

undersigned declines to conclude that, in the exercise of discretion, severance is appropriate.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** denying the motions to sever the defendants.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

| | |
|---|---|
| Date: May 16, 2013 | s/Michael Hluchaniuk<br>Michael Hluchaniuk<br>United States Magistrate Judge |

## CERTIFICATE OF SERVICE

I certify that on May 16, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Paul J. Nicoletti, John T. Hermann, Hattem A. Beydoun, Hattem A. Beydoun, and Joel J. Kirkpatrick.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov
