UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MALIBU MEDIA, LLC,**

    Plaintiff,

                                    Case No. 12-13312

v.

                            HONORABLE DENISE PAGE HOOD

**JOHN DOES 1-30,**

    **Defendants.**

                            /

### ORDER ADOPTING IN PART AND REJECTING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND GRANTING IN PART DEFENDANT JOHN DOE 28'S AMENDED MOTION TO SEVER DOE DEFENDANTS 2-30 AND TO QUASH SUBPOENA AND/OR DISMISS [DKT 19]

This matter is before the Court on Magistrate Judge Hluchaniuk's Report and Recommendation. **[Docket No. 61, filed May 16, 2013]** Various defendants filed timely objections to the Magistrate Judge's Report and Recommendation. For the reasons stated below, the Court orders that Defendant John Doe 28's Amended Motion to Sever Doe Defendants 2-30 and to Quash Subpoena and/or Dismiss[1] **[Docket No. 19, filed December 6, 2012]** be **GRANTED IN PART**.

---

[1] The Court notes that on January 4, 2013, John Doe X filed also filed a Motion to Sever. **[Docket No. 33]** However, on September 25, 2013, Plaintiff filed an Amended Notice of Voluntary Dismissal dismissing John Does 3, 4, 5, 6, 7, 8, 9, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 25, 26, 27 and 30 without prejudice. **[Docket No. 68, filed September 25, 2013]** Because the Court is under the belief that John Doe X is one of the named dismissed defendants, the Court

**I.     BACKGROUND**

The Magistrate Judge has explained the underlying allegations of this claim in its Report and Recommendation, and the Court adopts them in their entirety.

**II.    STANDARD OF REVIEW**

The standard of review to be employed by the Court when examining a Report and Recommendation is set forth in 28 U.S.C. § 636.  This Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C).  The Court "may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

In order to preserve the right to appeal, a party must file objections to the Report and Recommendation within fourteen days of service of a copy, as provided in 28 U.S.C. § 636(b)(1) and E.D. Mich. L.R. 72.1(d)(2).  Defendants John Does 10, 29, and X, and Doe 28 filed timely objections to the Magistrate Judge's Report and Recommendation on May 30 and 31, 2013, respectively.

**III.   ANALYSIS**

The Magistrate Judge reached two conclusions:  (1) shared downloading activity between peers in a Bit Torrent swarm constitutes a "series of transactions

---

issued an Order Deeming Moot Defendant John Doe X's Motion to Sever. **[Docket No. 69, filed September 30, 2013]**  At the time of this Order, Plaintiff has also voluntarily dismissed John Does 1 and 2 **[Docket No. 58, filed April 1, 2013]** and 24 **[Docket No. 60, filed April 30, 2013]** without prejudice.

or occurrences" having a "logical relationship" as per Rule 20 joinder requirements, and (2) the concerns for which severance would be appropriate have not yet arisen. Based on these findings, the Magistrate Judge recommends that severance is inappropriate at this time.

The Court agrees completely with the Magistrate Judge's reasoning regarding the Rule 20 joinder requirements and adopts the Report and Recommendation to that extent.

Regarding discretionary severance, the Court appreciates the fact that the Plaintiff has the legal right to defend its copyright. Should the Plaintiff decide to assert that right, the Court also appreciates the fact that the judicial system may be the only practical and legal way for the Plaintiff to uncover the wrongdoers' identities before resolving those disputes. However, even though the judicial system provides tools such as third-party subpoenas for exactly this purpose, "the courts should not . . . permit those tools to be used as a bludgeon." *In re BitTorrent Adult Film Copyright Infringement Cases*, No. 11-3995, 2012 WL 1570765, at *10 (E.D.N.Y. May 1, 2012). The main reasons supporting severance at this time are (1) there are few, if any, tangible benefits to joinder before discovery in these cases; (2) the probability of eventual delay, expense, and inconvenience outweighs any theoretical benefits of joinder before discovery; (3) there will be few, if any, future opportunities to sever because this Plaintiff in

3

particular has exhibited a pattern of failing to proceed even to discovery; and (4) all the while, judicial integrity is eroding because the judicial system is being used as an instrument of "essentially an extortion scheme." *Malibu Media, LLC v. John Does 1 through 10*, 2:12-CV-3623-ODW, 2012 WL 5382304 (C.D. Cal. June 27, 2012).

The analysis focuses on the period before discovery for two reasons: (1) the pattern exhibited by this plaintiff indicates a lack of intent to litigate these claims, and (2) these claims are not generally expected to go to trial. A clear pattern has been established in these copyright infringement cases: plaintiff files a mass claim under the guise of judicial economy and cost and convenience benefits, issues a third-party subpoena on Internet Service Providers (ISPs) before a Rule 26(f) conference to discover the Does' identities, and then pressures the identified Does to settle privately. *Id.* at *5. As the Magistrate Judge noted, "[T]he Court will not automatically hold plaintiff responsible for the alleged abuses of others in its industry." However, the Court may look at *this* plaintiff's pattern of conduct to see whether *it* has abused the joinder process, from which we can infer whether the Plaintiff actually intends to litigate such claims. A brief look at the docket reveals that in *this* district alone, the Plaintiff has closed 10 joinder claims that it filed within the past year. Of the 10 claims, every single one was voluntarily dismissed before a Rule 26(f) scheduling conference was even scheduled. And in these

4

2:12-cv-13312-DPH-MJH Doc # 70 Filed 09/30/13 Pg 5 of 15 Pg ID 1724

cases, settlement, if any, never accounted for all of the Does, meaning there was always a remainder of unresolved Does. Perhaps even more insightful is the Plaintiff's history with claims against individual Does. In this district alone, the Plaintiff has closed 12 individual claims that it filed within the past year. Of the 12 individual claims, 5 were settled before a 26(f) conference was scheduled. Of the 7 other cases, 6 were voluntarily dismissed before a 26(f) conference was scheduled and 1 after the conference was scheduled but before it was held. The fact that all 22 of the Plaintiff's cases within the past year were voluntarily dismissed or otherwise closed before a 26(f) conference raises a very strong inference that this plaintiff in particular does not actually intend to proceed with these claims beyond the pleadings stage.

While the Plaintiff may argue that it simply intends to refile individual claims against Does whose identities are uncovered during a joinder claim, a look at the court records dispels this proposition. Of the 225 Does voluntarily dismissed by the Plaintiff from the 11 joined claims (i.e. including the instant case), the Plaintiff has not filed subsequent follow-up individual claims against any one of them.[2] This clearly shows a lack of intent to actually litigate these claims because had the Plaintiff been using the judicial system as a "tool," it would have refiled

---

[2] The Plaintiff did refile individual claims against 7 IP addresses but then, in every one of those cases, also refiled a third party subpoena, lending the conclusion that the Plaintiff had not successfully discovered the Does' identities during the joinder claims.

5

individual claims against newly identified Does. Even notwithstanding the number of settlements resulting from all of the Plaintiff's joinder claims — 7 out of 280 defendants — one would expect the Plaintiff to have filed individual claims against *some* percentage of newly identified Does, even if those claims do not ultimately proceed to trial. Notwithstanding the voluntary dismissals in the last month, the Plaintiff has not filed individual claims against any Does that were voluntarily dismissed as long as about nine months ago. If the Plaintiff actually intended to litigate these claims, it would have filed individual claims shortly after voluntary dismissal. While it is possible that this use of the judicial system was 100% effective as a "tool" in facilitating private settlements, it is much more likely that the Plaintiff is using the system to achieve settlement of claims that it has no intention of litigating.

These types of claims are generally not expected to go to trial. There are 6 possible outcomes for Doe defendants: (1) a Doe's identity is undiscoverable for various reasons, (2) an identified Doe cannot be served for various reasons, (3) a culpable Doe settles before trial instead of offering a defense, (4) a culpable Doe argues a defense anyway, (5) an innocent Doe settles before trial despite having a valid defense, or (6) an innocent Doe argues a defense. It is this fifth category – innocent Does who settle before trial despite having a valid defense – that is the reason why the vast majority of cases do not proceed to trial. Even though

innocent Does technically have the legal right to choose between settling or arguing a defense, it is a hollow right for all practical purposes. The reality is that many innocent Does settle just to avoid the enormous amount of time and expense associated with these types of cases. *Third Degree Films, Inc. v. John Does 1-72*, No. 12-cv-14106, 2013 WL 1164024, at *7-8 (E.D. Mich. Mar. 18, 2013).

### A. There are few, if any, tangible benefits to joinder before discovery in these cases.

The purpose of Rule 20 is "to promote trial convenience and expedite the final determination of disputes, [by] lessen[ing] the delay, expense and inconvenience to all concerned." *Patrick Collins, Inc. v. Doe*, 282 F.R.D. 161, 166 (E.D. Mich. 2012) (quoting *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974)), *adopted by* 286 F.R.D. 319 (E.D. Mich. 2012). However, the plaintiffs in these cases are the only parties, if any, that can receive benefits before discovery, if any, from less delay, expense, or inconvenience. It is clear that a joined defendant does not realize any of these benefits when participating in a joinder claim (as compared to an individual claim) because he must spend significantly more time and expense addressing the submissions and hearings of other parties, in addition to serving his own submissions on all other parties. A closer question, however, is whether the plaintiff or the court realizes any benefit from joinder.

Joinder is not necessarily more convenient for the plaintiff because instead of sending submissions to single defendants in multiple claims, the plaintiff must send submissions to multiple defendants in a single claim. There may be a marginal initial convenience benefit from filing one joinder claim and one set of third-party subpoenas instead of multiple individual claims and multiple third-party subpoenas. However, any such benefit is likely offset by the sheer number of submissions between the parties and hearings required to coordinate all of their actions. More importantly, any convenience benefit is also offset by the difficult task of meeting deadlines and by possible extra hearings to extend those deadlines because deadlines do not change regardless of the number of defendants. In addition to inconvenience, the plaintiff does not realize any benefits in less delay. Being the only party adverse to the Does, the plaintiff must deal with multiple submissions from different Does, including pleadings, objections, and responses to objections. The only tangible benefit to be gained by the plaintiff in these cases is paying one filing fee instead of multiple fees. However, even this benefit is largely theoretical because the plaintiff may request attorney's fees under 17 U.S.C. § 505 for any copyright infringement case, whether individual or joinder.

As the Magistrate Judge clearly and comprehensively laid out in his report, joinder creates judicial inefficiencies, namely docket overload and logistical case management problems. If the case has only a few joined defendants, the amount of

judicial action required might still be less than the cumulative amount needed for individual claims, which is the intended goal of Rule 20. (In such a case, adjudication of a joinder claim would also reduce the risk of inconsistent judgments, which protects judicial integrity.) However, once the number of defendants in a joinder case crosses some threshold, the balance shifts from judicial efficiency to inefficiency because enough minds will differ that some defendants will prefer to do things differently than other defendants. For example, if a Bit Torrent swarm only consists of five users, the probability of judicial inefficiency is small because it is relatively easy to coordinate the submissions and appearances of all six parties. However, when the number is significantly larger, such as 30 in our case, the court will be inundated with time extension requests, objections to orders and magistrate recommendations, responses to objections, and replies to responses. In our case, it is ironic that three different Does objected to the Magistrate Judge's Report and Recommendation that, in addressing four related severance requests, determined that potential case management issues were merely speculative.

### B. **The probability of unfairness and judicial inefficiency outweighs any theoretical benefits of joinder before discovery.**

The process by which Rule 20 operates is having a fact-finder evaluate one joined claim and render a decision that applies fairly to all of the defendants because of their similar circumstances. The underlying rationale is that a court is

more efficient when it adjudicates a joinder claim once instead of adjudicating one claim and then being called upon to adjudicate simultaneous similar claims anew. The ultimate goal of the Federal Rules is "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Therefore, the benefits sought by the application of Rule 20 must be viewed through the lens of fairness and justice. Individualized defenses, which are not infrequent in these cases, inject an element of unfairness into the case and defeat judicial economy because "[t]he fact-intensive nature of these individualized defenses would require that the Court give individualized attention to each claim against each Defendant." *Third Degree Films, Inc. v. Does 1-47*, No. 12-cv-2391, 2012 WL 4005842, at *4 (D. Colo. Sept. 12, 2012). Instead of trying separate claims against individual Does or smaller groups of similarly situated Does, it would indeed be counterproductive to conduct one laborious trial that results in either (1) one sweeping decision that applies to defendants with different circumstances (i.e. unfair), or (2) a piecemeal decision with specifically tailored outcomes for isolated defendants or groups of similarly situated defendants (i.e. inefficient).

Just as the judicial efficiency balance shifts at some threshold number of defendants from efficiency to inefficiency, the fairness and justice balance shifts at some point from fair and just to unfair and unjust. Again, a Bit Torrent swarm

consisting of five users is much less likely to include users who would raise a defense than a swarm consisting of 30 users. However, whether a Doe defendant will raise a defense is often difficult to establish at the time of a motion to sever because often times many Does have yet to be identified or to answer. Therefore, the real issue becomes whether a court's need for actual evidence of abuse is more important than preserving judicial integrity.

### C. **There will be few, if any, future opportunities to sever because this Plaintiff in particular has exhibited a pattern of failing to proceed even to discovery.**

It is important first to note that Doe defendants in these types of cases typically do not bring defenses to the court's attention either because the traditional means – the answer – does not occur or the defendant negotiates privately with the plaintiff. In some cases, the Doe's name has not yet been discovered, precluding the need for an answer. And in other cases, the Doe proceeds anonymously under a protective order, also precluding the need for an answer. But in all cases, notwithstanding whether an answer was available, this plaintiff in particular has dismissed each of its joinder cases (except our case) before an answer could be filed. Therefore, the only actual forum where a defendant might raise a defense is during a hearing on a motion to sever. *Third Degree Films, Inc. v. John Does 1-72*, *supra*, at *8. If a court denies a motion to sever, there is simply no other opportunity, before the case is ultimately dismissed by the plaintiff, for an

individualized defense to come to the court's attention (thus instigating a sua sponte re-assessment of joinder). Therefore, the issue of whether to sever now or later basically becomes a question of now or never.

### D. All the while, judicial integrity is eroding because the judicial system is being used as an instrument of essentially an extortion scheme.

The Magistrate Judge makes the strong argument that discretionary severance really only becomes necessary when certain circumstances, such as unique defenses, arise that defeat the judicial efficiencies for which Rule 20 was created. Undeniably, consolidating multiple similar cases is more efficient than litigating one case after another when the cases raise the same issues. However, as discussed above, while this proposition may hold true for a case involving five Does, the probability of unfairness and judicial inefficiency usually outweighs any theoretical benefits of joinder when the case involves 30 Does. If the decision to sever or not to sever is without consequence, there would be no discussion: the Court would be able to raise the issue sua sponte should the need arise. But, as the Plaintiff's record clearly shows, the judicial machinery is not being used with the purpose of litigating its claims[3], but merely to identify the Does' identities in an

---

[3] Interestingly, an analysis of the court records reveals that the Plaintiff has even managed to circumvent the Rule 41 of voluntary dismissal. Due to the practical impossibility of keeping track of the hundreds of voluntarily dismissed Does, the Plaintiff has successfully managed to voluntarily dismissed at least one defendant without prejudice twice. *See* 13-11400 and 12-13311. While this may have been

inexpensive fashion and then pursue private settlement. As District Judge Otis Wright II noted in a similar case filed by this plaintiff against just 10 Does in California,

> The federal courts are not cogs in a plaintiff's copyright-enforcement business model. The Court will not idly watch what is essentially an extortion scheme, for a case that plaintiff has no intention of bringing to trial. By requiring Malibu to file separate lawsuits for each of the Doe Defendants, Malibu will have to expend additional resources to obtain a nuisance-value settlement — making this type of litigation less profitable. If Malibu desires to vindicate its copyright rights, it must do it the old-fashioned way and earn it.

*Malibu Media, LLC*, 2012 WL 5382304, at *4. Requiring the Plaintiff to bring individual claims neutralizes the courts' passive facilitator role in these cases by refusing to idly ease the process that is crucial to the plaintiffs' modus operandi. The courts will not only be requiring a minimum amount of good faith by such plaintiffs but will also be negating the unfair leverage of undue time and expense that the plaintiffs may exert on joined defendants. And in doing so, the courts are maintaining the integrity of the judicial system as an entity that promotes fairness and justice. If the Plaintiff truly wants to enforce its rights, it can do so by paying a filing fee upfront and requesting reimbursement of attorney fees should it be successful. From the Doe's point of view, he now has a more tangible right to

---

inadvertent on Plaintiff's part, it is further evidence that the Plaintiff does not intend on litigating these claims.

choose to settle or fight, only now without the added pressure of being subject to *undue* time and expense arising from mere association with 29 other Does.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the Report and Recommendation of Magistrate Judge Hluchaniuk **[Docket No. 61, filed on May 16, 2013]** is **ADOPTED IN PART and REJECTED IN PART**. The Report and Recommendation is adopted as to the requirements of permissive joinder and rejected as to discretionary severance.

**IT IS FURTHER ORDERED** that Defendant John Doe 28's Amended Motion to Sever Doe Defendants 2-30 and to Quash Subpoena and/or Dismiss **[Docket No. 19, filed on December 6, 2012]** is **GRANTED IN PART**.

**IT IS FURTHER ORDERED** that as a result of Plaintiff's Amended Notice of Voluntary Dismissal dismissing John Does 3, 4, 5, 6, 7, 8, 9, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 25, 26, 27 and 30 without prejudice **[Docket No. 68, filed September 25, 2013]** and Notice of Voluntary Dismissal dismissing John Does 1 and 2 **[Docket No. 58, fled April 1, 2013]** and 24 **[Docket No. 60, filed April 30, 2013]** without prejudice, the court hereby severs and **dismisses** from this action Doe Defendants 1 through 9, 11 through 27, and 30.

**IT IS FURTHER ORDERED** that the court hereby severs and **dismisses** from this action Doe Defendants 10 and 29.

**IT IS FURTHER ORDERED** that the subpoena served upon Doe Defendant 28's ISP remains in effect.  All of the subpoenas seeking discovery regarding Doe defendants 10 and 29 are ordered **QUASHED**.  Plaintiff shall immediately notify the ISP recipients of these subpoenas that said subpoenas have been quashed and that the Doe Defendants (except for Doe 28) have been severed from, and are not litigants in this case.

**IT IS FURTHER ORDERED** that Civil Action 2:12–CV–13312 is hereby assigned to Doe 28 as an individual defendant.  Plaintiff may file individual complaints against Doe Defendants 10 and 29.  Such cases will be assigned separate civil action numbers.

**IT IS SO ORDERED**.

                                              s/Denise Page Hood
                                              DENISE PAGE HOOD
                                              UNITED STATES DISTRICT JUDGE

Dated: September 30, 2013

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, September 30, 2013, by electronic and/or ordinary mail.

                                              s/Richard Loury for LaShawn Saulsberry
                                              Case Manager and Deputy Clerk
                                              (313) 234-5167